UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:08-CV-00034-R

WESTPORT INSURANCE CORP.                                                                    PLAINTIFF

v.

DONALD MUDD & MARTHA TOWE                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion for Reconsideration and Renewed Motion for Partial Summary Judgment (DN 30). Defendant Martha Towe has responded (DN 31) and Plaintiff has replied (DN 32). Defendant Donald Mudd has not responded and the time to file a response has expired. This motion is now ripe for adjudication. For the reasons that follow, Plaintiff's Motion for Reconsideration is GRANTED. Also, for the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

The circumstances of this action arise from a fire on August 13, 2003, that destroyed VFW Lt. Harold R. Cornwell Post 1298 ("VFW Post") in Bowling Green, Kentucky. Plaintiff Westport Insurance Corporation ("Westport") insured the building pursuant to a then existing insurance contract. After the destruction of the VFW Post, Westport paid $271,160 to cover the loss. Additionally, Westport insured the lawful gaming revenue generated at the VFW Post. Between August of 2003 and April of 2006, over $170,000 was stolen or fraudulently withheld from the management of the VFW Post. Westport paid $90,983 in satisfaction of that claim as well. During this time, Defendant Donald Mudd was employed by the VFW Post and his

1

girlfriend, Defendant Martha Towe ("Mudd" or "Towe" or "Defendants"), was affiliated with the Post in various capacities.[1]

The ensuing investigation by authorities of the fire and the missing gaming funds led to the arrest and subsequent prosecution of Mudd and Towe. On March 6, 2008, a jury found Mudd guilty of Illegal Structure of a Monetary Transaction, Arson, Conspiracy to Defraud the United States, and two counts of Mail Fraud. Towe was found guilty of Illegal Structuring of a Monetary Transaction, Conspiracy to Defraud the United States, and one count of Mail Fraud. Neither Defendant appealed their convictions; however Mudd did file a Motion to Vacate and Set Aside his Conviction. Upon Judge Goebel's recommendation, this Court denied Mudd's § 2255 Motion on June 30, 2010.

On March 5, 2008, Westport filed the current action, claiming it was subrogated to the VFW Post's interests in all claims connected to the arson and theft losses. It sought relief under eight different causes of action. As a partial basis for the claims of subrogation, Westport pointed to a release signed by a representative of the VFW Post. DN 30-1. The day following the filing of this action, Westport also submitted to this Court a Motion for Partial Summary Judgment asserting that Mudd and Towe were collaterally estopped from arguing against several of Westport's claims. This Court decided that such a motion was inappropriate for a variety of reasons, including that the more liberal rules of civil discovery could provide Mudd and Towe with evidence not previously available during their criminal prosecution.

Westport now moves this Court to reconsider its earlier decision to deny its Motion for Partial Summary Judgment given that the Defendants have had a full and fair opportunity to

---

[1] Both parties agree that Towe was never a paid employee at the VFW Post.

complete pre-trial discovery. Westport alleges that Mudd and Towe are collaterally estopped from litigating the factual issues established in the previous criminal case with regards to the civil claims asserted in this action. According to Westport, Mudd is estopped from denying liability on Count Two (claim under the fraudulent insurance act), Count Three (civil theft), Count Four (arson), Count Six (conspiracy to commit civil theft), and Count Eight (violations of the Racketeer Influenced and Corrupt Organization Act ("RICO")). Westport further asserts that Towe is collaterally estopped from litigating Count Three, Count Six, and Count Eight of the current action. Towe objects to this motion on two bases: first, she claims whether she fits under the definition of an "employee" under Westport's insurance policy was never litigated at trial and therefore collateral estoppel on her claims is improper; second, Towe states that the facts litigated in the criminal trial are not sufficient to prove a claim under RICO. To date, Mudd has not responded to Westport's motion.

**STANDARDS**

**I. Standard for Motion for Reconsideration**

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Since there is an interest in the finality of a decision, a court should grant motions for reconsideration "only if the prior decision appears clearly to be legally or factually erroneous." *Mobley v. Warden London Correctional Inst.*, No. 2:09-cv-638, 2010 WL 3586964, at *2 (S.D. Ohio Sept. 13, 2010); *see Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x. 949, 959 (6th Cir. 2004) ("Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of

controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.").

**II. Standard for Motion for Summary Judgment**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**DISCUSSION**

**I. Westport's Motion for Reconsideration**

In the previous decision denying Westport's motion for partial summary judgment, this

Court reasoned that offensive collateral estoppel was inappropriate because the doctrine would be unfair to Defendants. At the time, Defendants had not been given an opportunity to meaningfully consult with counsel to prepare a different strategy or defense at trial for this civil action. Nor had Mudd or Towe been able to conduct additional discovery using the liberal civil discovery rules as compared to the more limited rules of federal criminal practice.

Since that decision, Defendants have had over a year to prepare for this action. In that time, neither Defendant has served Westport with interrogatories, requested further documentation, or deposed any individual listed as a potential witness in this matter. As the opportunity for discovery has passed, the original concerns this Court had in applying offensive collateral estoppel are no longer present.

Both Kentucky courts and the federal judiciary recognize the doctrine of offensive collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-27 (1979); *May v. Oldfield*, 698 F. Supp. 124, 126-27 (E.D. Ky. 1988); *Covington v. Board of Trustees*, 903 S.W.2d 517, 521-22 (Ky. 1995). The doctrine has been regularly employed by courts to preclude the litigation of an issue in a civil action already addressed in an associated criminal case. *See e.g.*, *Zack v. Comm'r of Internal Revenue*, 291 F.3d 407, 415 (6th Cir. 2002); *May v. Oldfield*, 698 F. Supp. 124, 126-27 (E.D. Ky. 1988); *Caudill v. Carpenter*, No. No. 2007-CA-002500, 2008 WL 4683223, at *3-4 (Ky. Ct. App. Oct. 24, 2008). Moreover, "[c]ollateral estoppel is designed to protect parties from multiple lawsuits and potentially inconsistent decisions, as well as to conserve judicial resources." *Harvis v. Roadway Exp., Inc.*, 973 F.2d 490, 495 (6th Cir. 1992). Given the similarity in evidence in the past criminal action and the current civil case, the precedent for allowing offensive collateral estoppel under Kentucky and

5

federal law, and to efficiently utilize judicial resources, reconsideration of this Court's earlier decision is proper.

## II. Westport's Motion for Partial Summary Judgment

"[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co.*, 439 U.S. at 326 n. 4. Collateral estoppel may be applied to bar litigation of an issue only if four basic criteria are met: "(1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."[2] *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009) (citing *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987)).

Even when these requirements are met, however, "'a trial judge should not allow the use of offensive collateral estoppel'" when "'the application of offensive estoppel would be unfair to a defendant.'" *Patrick v. S. Cent. Bell Tel. Co.*, 641 F.2d 1192, 1199 (6th Cir. 1980) (quoting *Parklane*, 439 U.S. at 331); *see also Cobbins*, 566 F.3d at 590. Factors counseling caution in applying the doctrine include the following: (1) where certain procedures were not available to a party in the prior action, (2) if a party litigated the prior action in an inconvenient forum, (3)

---

[2] For the purposes of this Motion for Partial Summary Judgment, the Court assumes that the third and fourth requirements for collateral estoppel have been met for all the claims set forth below. Neither party contests that the prior criminal proceeding for Mudd and Towe ended with a final judgment on the merits or that the criminal trial offered a full and fair opportunity for Defendants to litigate these issues.

whether the current plaintiff could have been joined in the prior action, (4) whether the party against whom estoppel is being asserted lacked the incentive to litigate in the prior action, (5) if the party against whom collateral estoppel is sought had a full and fair opportunity to litigate the prior action and (6) if there exists any reasons for unfairness in applying collateral estoppel. *May v. Oldfield*, 698 F. Supp. 124, 126 (E.D. Ky. 1988) (citation omitted); *see Parklane*, 439 U.S. at 331-32.

Westport asserts that Mudd and Towe are precluded from litigating factual matters contained within certain counts of Westport's complaint that were conclusively established by their criminal trial. Each of these counts is addressed in turn.

### a. Towe's liability for civil theft

In the criminal case, Towe was found guilty of mail fraud for executing a scheme to steal gaming revenues and then under reporting those revenues to the Kentucky Office of Charitable Gaming. Specifically, the count of mail fraud in the Second Superseding Indictment charged Towe with the following:

> From in or about August 2003, and continuing to on or about April 2006, the defendants, Donald Mudd and Martha Towe, devised and intended to devise a scheme and artifice to defraud the [VFW Post] of money and property by means of false and fraudulent pretenses and representations, knowing that the pretenses and representations were false and fraudulent when made, in that they stole proceeds from the sale of pull-tab games sold at [the VFW Post] and during the course of the scheme and artifice to defraud [Defendants] under reported to the Kentucky Office of Charitable Gaming approximately $174,848 . . . .

DN 30-5 at 22-23.

Westport now argues that Towe's conviction under this count precludes her from disputing liability for committing civil theft. Westport contends that when considering this conviction was for mail fraud, the jury necessarily decided that Towe stole gaming revenue from

7

the VFW Post. As the basis for the civil theft claim, the motion states that the release signed by the VFW Post's representative allows Westport to assert "all claims and demands against any other party, person, or corporation arising from" the lost gaming revenue. DN 30-1. The release addresses the payment of $90,983 to the VFW Post for its losses under the dishonest employee provision of the policy, specifically the theft perpetrated by Mudd.

Given the rigors of the criminal prosecution and the language set forth in the indictment, collateral estoppel precluding litigation of the civil theft claim against Towe is proper. The issue of whether Towe absconded with gaming revenue from the VFW Post was an important and necessary decision in finding whether Towe was guilty of mail fraud, the criminal case ended in a jury verdict of guilty, and Towe had a full and fair opportunity at the trial to argue the issue. Westport will also rely on the same proof offered in Towe's criminal trial to prove the claim of civil theft in this action. Lastly, none of the aforementioned factors that demonstrate the unfair application of collateral estoppel are present. As there is no genuine issue of material fact that could be raised at trial arguing against Towe's liability for theft, summary judgment is appropriate.

Towe insists collateral estoppel is inappropriate for the allegations of theft for two reasons. First, since Towe was never an employee of the VFW Post, Westport cannot bring an action against her unless there is past precedent for applying the dishonest employee provision of the insurance policy to losses created by non-employees. Second, the question of whether Towe falls under the definition of "employee" in the dishonest employee provision of the policy was not litigated at the criminal trial and therefore it has to be confronted during this civil action.

This Court is not persuaded by either of Towe's arguments. The release unambiguously assigns all rights the VFW Post could assert against any person arising from or connected to the

loss created by Mudd's fraudulent and deceitful acts. As such, it is irrelevant whether Towe falls under the definition of "employee" under the policy or if the dishonest employee provision of the policy has even been applied to non-employee losses; the only relevant query is whether the VFW Post could have brought an action against Towe to recover the ill-gotten gaming revenue she received as a result of her relationship with Mudd. Such claims were undoubtedly possible under Kentucky law against both Mudd and Towe; the VFW Post could have relied on the torts of civil theft or conversion to recoup the stolen funds. Consequently, Towe's objections are without merit.

### b. Towe's liability for RICO violations

Westport also seeks relief for violations of RICO, in particular 12 U.S.C. § 1962(c) of the Act. The motion explains that as Mudd and Towe were jointly convicted of mail fraud, they are estopped from arguing liability under RICO.

RICO provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Precedent has interpreted this section to require a plaintiff to show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Arnold v. Petland, Inc.*, No. 2:07-cv-01307, 2010 WL 2301194, at *3 (S.D. Ohio June 4, 2010) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). As this Motion for Partial Summary Judgment takes place in the context of a petition for collateral estoppel, the relevant question before this Court is whether the charges proven against Towe at the criminal trial demonstrate that there is no genuine issue of material fact regarding the four elements required under §

9

1962(c).

Federal statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has described an enterprise as an organization where "the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The Sixth Circuit Court of Appeals demands that the existence of an enterprise be shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associations function as a continuing unit." *United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000) (quoting *Turkette*, 452 U.S. at 583). Moreover, "[c]ontinuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than ad hoc, basis." *Id.* (quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir. 1987)). Other circuits have elaborated on this definition. *See Asa-Brandt, Inc. v. ADM Investor Servs., Inc.*, 344 F.3d 738, 752 (8th Cir. 2003) ("[T]he enterprise must have a common or shared purpose, some continuity of personnel, and an ascertainable structure distinct from the pattern of racketeering."); *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) (describing an enterprise as "an ongoing organization, formal or informal, in which the various associates function as a continuing unit"); *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) (describing an enterprise as "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making").

Collateral estoppel for Towe's violation of RICO is not appropriate because the issue of whether Mudd and Towe's relationship constituted an enterprise was neither actually litigated

during the criminal trial nor was it necessary to the outcome of the proceeding. While there was undoubtedly evidence presented about how Defendants orchestrated their fraudulent scheme, upon examining the Second Superseding Indictment, the joint mail fraud charge did not require an examination of the hierarchal structure of their relationship. Furthermore, even if Mudd and Towe's relationship under this joint charge could be termed a conspiracy, the presence of a conspiracy is not demonstrative of an enterprise under RICO. *See e.g., Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999) (finding that not every conspiracy is an enterprise); *Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir. 1990) (same). Finally, the outcome of the criminal case was in no way predicated on whether an enterprise existed between the Mudd and Towe. While Westport puts forth testimony offered at the trial in their motion describing the conspiratorial acts of the defendants, the appropriate analysis is not the past evidence put forth but instead what the jury was required to decide. None of the criminal charges leveled against Towe required the jury to examine the organizational structure or the relationship between Mudd and herself. As such, it would be incorrect to say that finding an enterprise existed between Defendants was necessary for the jury.

For these reasons, summary judgment for Towe's violation of § 1962(c) under RICO is improper.

### c. Towe's liability for civil conspiracy to commit theft

Westport argues that with Mudd and Towe's joint mail fraud conviction, they are precluded from arguing liability on the claim for civil conspiracy to commit theft. Under Kentucky law, "[i]n order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277

S.W.3d 255, 261 (Ky. Ct. App. 2008) (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995)). In describing whether conspirators acted with "concert of action," the Kentucky Court of Appeals has stated:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

*Id.* (quoting *Farmer v. City of Newport*, 748 S.W.2d 162, 164 (Ky. Ct. App. 1988)).

Upon applying the requirements for collateral estoppel to Defendants' joint conviction of mail fraud, summary judgment as to liability on this particular count is inappropriate. It is clear that the jury in the criminal trial concluded that Mudd and Towe "devised and intended to devise a scheme and artifice to defraud" the VFW Post. DN 30-5 at 22. However, the joint count for mail fraud as described in the criminal indictment did not require the jury to find that there was an agreement between Defendants. Indeed, although the two were jointly convicted, instructions at the criminal trial would have allowed the jury to acquit one or both of the defendants had the evidence been insufficient. For this reason alone, the jury was not required to find that Mudd and Towe agreed on any subject matter under this criminal count. Undoubtedly, an agreement between the parties can be implied from the language in the indictment; however, for Westport to succeed on collateral estoppel, an implication that the jury decided the issue in the criminal case is not enough. Westport must show that "the determination of the issue [was] necessary to the outcome of the prior proceedings." *Cobbins*, 566 F.3d at 589-90. Although they were jointly convicted of mail fraud at their criminal trial, the jury could have done so without necessarily determining whether there was an agreement between Mudd and Towe.

Furthermore, while Mudd and Towe were convicted on conspiracy charges at their criminal trial, these were conspiracies that did not affect the rights that Westport seeks to assert in this civil action. So while the jury did specifically determine that Defendants had entered an agreement for the purposes of their conviction of Conspiracy to Defraud the United States for example, this agreement between Mudd and Towe was not injurious to Westport and therefore cannot be relied upon to satisfy the elements of civil conspiracy to commit theft.

When considering that all reasonable inferences must be drawn in favor of the non-moving party, the language of the joint charge of mail fraud from the indictment persuades this Court that summary judgment as to liability on this claim is improper.

### d. Mudd's liability for arson

Westport argues in this Motion for Partial Summary Judgment that Mudd's previous conviction for arson prohibits him from arguing liability in this civil suit. Mudd was convicted under the federal arson statute. It proscribes that one is guilty of arson if that individual "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property." 18 U.S.C. § 844(i).

As Westport may bring claims on behalf of the VFW Post by virtue of the earlier release, Westport's claim against Mudd for the destruction of the VFW Post is identical to what the government proved at his criminal trial. There the jury found beyond a reasonable doubt that Mudd maliciously destroyed the building by fire. The evidence relied upon by Mudd at his criminal trial will be substantially similar, if not identical, to the proof offered in this civil action.[4] Thus, even viewing the evidence in the light most favorable to Mudd, there is no

---

[4] As Mudd has not responded to this motion or filed any documents in this action, this Court can only assume that Mudd plans on offering the same defenses and facts that he employed at his

13

genuine issue of material fact when considering the identical nature of the criminal conviction and this civil claim.

### e. Mudd's liability for violations under the Fraudulent Insurance Act

Westport avers that as the jury convicted Mudd of mail fraud for sending three false proof-of-loss statements to Westport, there is no genuine issue of material fact to be addressed with regard to Mudd's liability for violating KRS 304.47-020. Title 47 of Kentucky's insurance code deals explicitly with insurance fraud. *See* KRS § 304.47 *et seq*. Under the code, a person commits a "fraudulent insurance act" where that individual "[k]nowingly and with intent to defraud or deceive presents, causes to be presented, or prepares with knowledge or belief that it will be presented to an insurer . . . any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false, incomplete, or misleading information concerning any fact or thing material to a claim." KRS § 304.47-020(1)(a).

In his criminal trial, Mudd was convicted on two separate counts of mail fraud, one individually and one jointly with Towe. In the Second Superseding Indictment, Mudd's individual count of mail fraud lays out that on three separate occasions, he certified a sworn statement in a proof-of-loss form that the loss suffered by the VFW Post "did not originate by any act, design or procurement on the part of . . . this affiant." DN 30-5 at 11. The indictment then describes how Mudd submitted the form to Westport, upon which it relied when issuing a number of payments to the VFW Post. Finally, the indictment sets forth that Mudd diverted to his own personal accounts over seven thousand dollars from insurance proceeds that were

---

criminal trial.

intended for the VFW Post.

The jury in Mudd's criminal trial was directly confronted with whether he submitted false or misleading documentation to an insurer and a conviction on this individual count of mail fraud was impossible without deciding this particular issue. *See Cobbins*, 566 F.3d at 589-90 (describing the requirements for collateral estoppel). Given that the proof in the past criminal case and this civil action will be identical to demonstrate Westport's claim, there can be no issue of material fact regarding whether Mudd is liable under KRS 304.47-020(1)(a). Allowing Mudd to argue liability would undermine the goals of judicial efficiency that collateral estoppel seeks to promote. *See United States v. Perez*, No. 98-5196, 1999 WL 196501, at *3 (6th Cir. Mar. 26, 1999). For these reasons, summary judgment for Westport's claim that Mudd committed a Fraudulent Insurance Act is appropriate.

### f. Mudd's liability for theft

Westport argues that Mudd is collaterally estopped from denying his liability for civil theft. Given this Court's decision on Towe with regard to this claim, *supra*, and that the same criminal conviction provides the foundation for this claim against Mudd, summary judgment in favor of Westport is appropriate.

### g. Mudd's liability for civil conspiracy to commit theft

Westport argues that Mudd is collaterally estopped from denying his liability for conspiracy to commit civil theft. Given this Court's decision on Towe with regard to this claim, *supra*, summary judgment in favor of Westport is improper.

### h. Mudd's liability for RICO violations

Westport argues that Mudd is collaterally estopped from denying his liability for civil violations of RICO. Given this Court's decision on Towe with regard to this claim, *supra*,

summary judgment in favor of Westport is improper.

## CONCLUSION

FOR THE FOREGOING REASONS, Plaintiff's Motion for Reconsideration (DN 30) is GRANTED.

It is also ORDERED that FOR THE FOREGOING REASONS, Plaintiff's Renewed Motion for Partial Summary Judgment (DN 30) is GRANTED IN PART AND DENIED IN PART. Specifically, Plaintiff's Motion for Partial Summary Judgment is GRANTED for Defendant Martha Towe's liability for civil theft and Defendant Donald Mudd's liabiltiy for civil theft, arson, and commission of a fraudulent insurance act. Plaintiff's Motion for Partial Summary Judgment is DENIED for Defendant Martha Towe and Defendant Donald Mudd's liability for conspiracy to commit civil theft and for violations of 12 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organization Act.